Morris, D. J.
The excuse of the tug for not keeping out of the way of the schooner is that the schooner changed her course. The master of the tug states that when he had taken the barge in tow and got out from Henderson’s wharf and headed down the stream, on his course for the Baltimore & Ohio Railroad elevators, he saw both of the schooner’s lights coming towards him head on; that he ported his wheel a little to *786 show the sehooner his red light; that the result was that the schooner’s red light opened more plainly to him. Finding, that the schooner was getting close to him he put his helm hard a-port to avoid her, and just at that time she changed her course and showed her green light, and he then reversed at full speed but could not avoid the collision.
Assuming that the sehooner did change her course, and assuming that the maneuvers of the tug were all of them proper, the tug has not exculpated herself for the reason that the schooner could not see her lights, and, having no warning of her approach, was not to blame for changing her course. It is to no purpose that the regulation lights are fixed and burning if they are so obstructed as not to be seen by approaching vessels. The tug was towing a barge 195 feet long, on which were double railroad tracks, and on these were eleven horse cars, such as are used for freight. The tug was made fast to the after end of the barge, and on the side furthest from that on which the sehooner was approaching, so that there was not only the width of the barge and cars, but nearly the whole diagonal length of the mass of barge and cars, to obstruct the tug’s lights. For the purpose of obviating the obstruction caused by the height of the cars on the barge, the tug’s side lights had been fixed unusually high, and they were four feet higher than the tops of the cars, but by persons navigating a small vessel loaded down so deep in the water as was the schooner in this case, and approaching from the diagonally opposite end of the barge from the end to which the tug was made fast, they could not be seen.
The testimony of those on the schooner is that they were keeping along the southernmost side of the harbor, intending to anchor just above Locust Point; that when they got around the Baltimore & Ohio Railroad’s long pier near Fort McHenry, and almost a mile from Henderson’s wharf, from which the tug started, they did change their course a little to the southward, conforming to the outline of the shore, and keeping near the docks; that they saw no lights whatever on the tug and barge until they were hailed from the barge at a distance of about 70 yards off on their starboard side; that *787 they oould then do nothing, as they had little more than steerage way, and the wharves were close on their port side; that they saw no light whatever, and were struck by the barge in less than two minutes after they heard the hail, The testimony of all on board the schooner is positive that they saw nothing but a dark mass moving down upon them. It is easy to believe that this was the fact. The only lights they could have seen were the two vertical mast head-lights of the tug, and the lantern which had been placed on the port side of the barge, on the platform beside the cars, midway of her length. It is quite possible, however, that to persons so near the surface of the water as those on the schooner these lights also were obstructed when close. But even if these lights could have been seen they would have afforded no sufficient indication of the direction in which the barge was moving, especially when surrounded by the numerous other lights of a crowded harbor.
It has been urged that the tug and tow were in fault in not observing the ninth rule prescribed by the board of supervising inspectors of steam-vessels, which, in addition to the other regulation lights, requires that on tows of canal-boats and barges a white light shall be carried on the extreme outside of the tow, and also on the extreme after part; but it appears to me that the fault which led to this collision was permitting the colored side lights of the tug to be so obstructed by the cars as not to be visible to any one low down on the water on her port side.
From these considerations, in my judgment, it results that the tug is to be held liable for the collision, and it becomes unnecessary to discuss the testimony tending to show that, even after the schooner is said to have changed her course, the tug might have avoided her by reversing at once, or going to port instead of continuing to go to starboard under a hard a-port wheel.
Proof has been offered showing the total damages to have been $4,501.28, itemized in a statement filed by libellant’s proctor. The items of this statement are satisfactorily proved, with the exception of the propriety of the four and *788 a-half months’ demurrage. From the ship-carpenter’s own testimony it appears, I think, that three months should have been a reasonably sufficient time in which to have completed the repairs made necessary by the collision. I therefore deduct one month and a-half, which would reduce the demurrage from $553 to $368.67.